Filed 2/24/15  Fowler v. CarMax. CA3/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN WADE FOWLER et al., | B238426 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC388340) |
| v. | |
| CARMAX, INC., et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 28, 2015, be modified as follows:

1.  On page 18, first sentence of the second full paragraph, the word "addressed" is changed to "briefed."

There is no change in the judgment.

The petition for rehearing is denied.

NOT TO BE PUBLISHED.

_____

   CHANEY, Acting P. J.        JOHNSON, J.

Filed 1/28/15  Fowler v. CarMax CA2/1 (unmodified version)
Opinion following remand from U.S. Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOHN WADE FOWLER et al., | B238426 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC388340) |
| v. | |
| CARMAX, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed in part and reversed in part.

Kingsley & Kingsley, Eric B. Kingsley, Darren M. Cohen; The Cooper Law Firm, Scott B. Cooper; The Carter Law Firm and Roger R. Carter for Plaintiffs and Appellants.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack F. Sholkoff and Christopher W. Decker for Defendants and Respondents.

_____

John Wade Fowler and Wahid Areso filed class complaints against CarMax,[1] alleging wage and hour violations.  Fowler and Areso appealed from the trial court's order granting CarMax's motion to compel arbitration.  In a prior opinion, we reversed and remanded with directions on the ground that the trial court erred in concluding that *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*) had been rejected by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2 742, 131 S.Ct. 1740] (*Concepcion*), and we directed the trial court to determine whether the factors in *Gentry* existed to allow Fowler to proceed in court with the class action.  (*Fowler v. Carmax* (March 26, 2013, B238426) [nonpub. opn.].)  The California Supreme Court denied review.  (July 10, 2013, S210443.)

CarMax filed a petition for writ of certiorari in the Supreme Court, and on February 24, 2014, the court granted the writ (134 S.Ct. 1277), vacated the judgment, and remanded to this court for further consideration in light of *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. ____ [186 L.Ed.2d 417, 133 S.Ct. 2304] (*Italian Colors*), decided three months after our prior opinion in this case.  We requested and reviewed supplemental briefing from the parties on the application of *Italian Colors*.  Subsequently, the California Supreme Court decided *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) (*Iskanian*) 59 Cal.4th 348, 366, holding that "in light of *Concepcion*, the FAA [Federal Arbitration Act] preempts the *Gentry* rule."  We therefore affirm the trial court order granting the motion to compel arbitration as to all but Fowler's and Areso's representative claims under the Private Attorneys General Act of 2004 (PAGA), Labor Code section 2698 et seq.

Portions of the following are substantially similar to our prior opinion.

---

[1] CarMax, Inc., CarMax Auto Superstores California, LLC, and CarMax Auto Superstores West Coast, Inc.  CarMax, Inc. was dismissed without prejudice pursuant to a tolling agreement by stipulation and order filed June 24, 2008.

## BACKGROUND

As a condition of applying for employment with CarMax, Fowler and Areso were required to sign the CarMax dispute resolution agreement, which provided that any claims arising out of employment with CarMax be "settle[d] . . . exclusively by final and binding arbitration before a neutral Arbitrator," and any arbitration "will be conducted in accordance with the CarMax Dispute Resolution Rules and Procedures." Fowler signed the agreement on August 5, 2006, and Areso signed it on May 17, 2006; CarMax also signed the agreement. Fowler and Areso received a copy of the associated Dispute Resolution Rules and Procedures. We hereinafter refer to the agreement and the incorporated rules and procedures collectively as the arbitration agreement.

The arbitration agreement allowed each party up to 20 interrogatories or document requests, and allowed each party to take up to three depositions. The arbitrator had the discretion to permit additional discovery "[u]pon the request of any Party and a showing of substantial need . . . but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration."

The arbitration agreement also prohibited class arbitration: "The Arbitrator shall not consolidate claims of different Associates into one proceeding, nor shall the Arbitrator have the power to hear an arbitration as a class action (a class action involves an arbitration or lawsuit where representative members of a large group who claim to share a common interest seek collective relief)." The agreement also provided: "CarMax may alter or terminate the [arbitration agreement] on December 31 of any year upon giving thirty (30) calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the [arbitration agreement] in effect at the time the Arbitration Request Form is received by the Company." Notice of termination or alteration of the arbitration agreement "may be given by posting a written notice by December 1 of each year at all CarMax locations." The arbitration agreement and any award pursuant to it "shall be enforceable and subject to the Federal Arbitration Act, 9 U.S.[C. ]§ 1, et seq. . . ."

3

In April 2008, Fowler, who was employed by CarMax as a sales consultant, filed a putative class action in superior court on behalf of a class of himself and other nonexempt CarMax employees, including a subclass of sales consultants. The complaint alleged that CarMax failed to provide meal and rest periods, failed to comply with wage statement requirements, failed to timely pay wages due at termination, and violated the unfair competition law. Areso's wife Leena, who also was employed by CarMax as a sales consultant, filed a putative class action against CarMax on behalf of all persons employed by CarMax as sales consultants in the four years prior to filing, and an amended complaint filed in July 2008 added Areso as a named plaintiff. Areso's first amended complaint alleged that CarMax failed to provide meal breaks and violated the unfair competition law. The amended complaint also included a claim for civil penalties for plaintiffs and the proposed class pursuant to the Private Attorneys General Act of 2004 (PAGA), Labor Code section 2698 et seq. Areso filed a notice of related cases, and the actions were assigned to the same courtroom.

Discovery ensued on both sides. On August 20, 2008, Fowler and Areso (hereinafter, collectively Plaintiffs) propounded special interrogatories and requests for production of documents to CarMax; CarMax responded in October 2008. Also in August 2008, CarMax propounded 34 requests for production of documents on Plaintiffs, who responded on September 24, 2008. On November 20, 2008, CarMax propounded special interrogatories on Plaintiffs, who responded in December 2008. On February 17, 2009, Plaintiffs served a second set of special interrogatories and requests for production of documents on CarMax, who responded in April 2009. Also in April 2009, CarMax served a second set of special interrogatories, and a second set of requests for production, on Plaintiffs. CarMax took the deposition of Leena Areso in September 2008, and took the deposition of Wahid Areso in October 2008. In January 2009, Plaintiffs took the deposition of CarMax's persons most knowledgeable.

CarMax filed two motions for summary adjudication in January 2009: one as to Leena and Wahid Areso's first cause of action for failure to pay overtime, and another as

4

to Fowler's fourth cause of action for failure to provide itemized wage statements. The trial court granted both of CarMax's motions for summary adjudication on June 16, 2009. That same day, pursuant to a stipulation by the parties, the trial court stayed Plaintiffs' cases until the California Supreme Court entered a decision following its grant of review in *Brinker Restaurant Corp. v. Superior Court* (2008) 165 Cal.App.4th 25.[2] Leena Areso appealed the summary adjudication on her overtime claim, and dismissed her other claims; we affirmed the trial court's ruling. (*Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996.) The remaining issues in Plaintiffs' putative class actions are that CarMax failed to provide meal periods (Fowler and Areso) and rest periods (Fowler), and derivative claims.

While the stay was still in effect, on June 2, 2011, counsel for Carmax sent a letter to Plaintiff's counsel requesting that Plaintiffs submit their cases to arbitration and dismiss their class claims, in light of the United States Supreme Court's April 27, 2011 decision in *Concepcion*, *supra*, 563 U.S. ___. Counsel for Plaintiffs refused, responding that CarMax had taken steps inconsistent with the intent to invoke arbitration and had waived its right to compel arbitration. Plaintiffs also argued that in any event, the agreement was substantively and procedurally unconscionable and therefore unenforceable.

CarMax then filed a motion on or about June 17, 2011 to vacate the stay and compel arbitration on an individual basis. Plaintiffs filed an opposition on July 1, 2011, arguing that CarMax had waived its right to compel arbitration, the agreement was procedurally and substantively unconscionable, *Concepcion* did not preempt the California Supreme Court decision in *Gentry*, *supra*, 42 Cal.4th 443, the agreement violated the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.), and the Plaintiffs' claims under PAGA were not arbitrable. Plaintiffs requested that the court

---

[2] On April 12, 2012, the California Supreme Court determined issues related to meal and rest periods not in issue on this appeal in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*).

5

allow additional discovery before issuing a ruling to "develop a more extensive factual record on whether Defendants' class action ban would prevent Plaintiffs and the putative class members from vindicating their non-waivable statutory rights. Because Defendants had never raised this issue before the instant motion, there was no need to conduct discovery on the issue."

On July 19, 2011, the trial court held a hearing on CarMax's motion to compel arbitration, took the case under submission, and requested supplemental briefing from both parties. The court issued a proposed order granting the motion to compel on November 9, 2011. After further argument on November 17, 2011, the court issued an order granting CarMax's motion to compel on November 21, 2011. The trial court granted the motion "based primarily on the holding and reasoning of [*Concepcion*]," which the court believed "raise[d] serious questions as to the continued validity of case such as [*Gentry*]. . . ." The court found: CarMax had not waived its right to compel arbitration; *Gentry* was no longer applicable to determine whether the class action waiver was invalid; the arbitration agreement was not unconscionable merely because it was a contract of adhesion; the PAGA claims were arbitrable but only on an individual basis; and the NLRA did not preempt the agreement. The court concluded that Plaintiffs were required "to arbitrate their individual claims without inclusion of the class claims." The court stayed the case pending completion of the arbitration.

Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### I. The trial court's order granting the motion to compel is appealable.

CarMax contends that the trial court's order compelling arbitration is not appealable and we should therefore dismiss the appeal. We disagree.

A trial court order compelling arbitration is ordinarily reviewable only after the arbitration is complete and a party appeals from the resulting judgment. (*Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1088–1089.) An exception is the death knell doctrine, which allows immediate appeal of such an order if it effectively

terminates class claims while allowing individual claims to proceed. As the California Supreme Court recently explained, an order "determining the plaintiff could not maintain his claims as a class action but could seek individual relief, was appealable . . . [b]ecause the order effectively rang the death knell for the class claims," and therefore was "in essence a final judgment on those claims." (*In re Baycol Cases I , and II* (2011) 51 Cal.4th 751, 757.) This permits an appeal from "an order that . . . amounts to a de facto final judgment for absent plaintiffs, under circumstances where . . . the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*Id.* at p. 759.) That is precisely what the trial court's order granting CarMax's motion to compel did, in finding the class action waiver was enforceable and requiring Plaintiffs to arbitrate their individual claims without inclusion of the class claims. *In re Baycol Cases I and II* make clear that Plaintiffs need not present evidence that they will not be able to pursue their *individual* claims as a result of the trial court's order. CarMax's reliance on dicta to the contrary in *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115[3] and *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, is therefore to no avail. The order is appealable. (*Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288, abrogated on other grounds by *Iskanian*, *supra*, 59 Cal.4th at p. 366.)

## II. CarMax did not waive the right to compel arbitration.

The trial court concluded that CarMax had not waived its right to compel arbitration, although before it moved to compel CarMax had filed two successful motions

---

[3] Despite what it termed Nelsen's "default" in failing to show that he could not pursue his individual claims, the court of appeal concluded it did not need to decide whether Nelsen's appeal was within the death knell doctrine, instead exercising its discretion to treat the appeal as a petition for a writ of mandate to "ensure appellate review of the court's arbitration order in the event there is no future appellate proceeding in which the order will be reviewable." (*Nelsen v. Legacy Partners Residential, Inc.*, *supra*, 207 Cal.App.4th at p. 1123.) In this case, the trial court's minute order stated: "This matter is worthy of immediate appellate review via writ proceeding under the standards of C.C.P. section 166.1, and plaintiffs should so advise the Court of Appeal."

for summary adjudication and obtained "substantial discovery" from the Plaintiffs: "It is true that this all happened, but the key point is that it would have appeared pointless and probably even a risky strategy . . . for defendants and their counsel to challenge the controlling effect of *Discover Bank* [*v. Superior Court* (2005) 36 Cal.4th 148 (overruled in *Concepcion*, *supra*, 563 U.S. ___) ( *Discover Bank*)] and *Gentry* . . . and similar California appellate authorities which appeared to prohibit state court enforcement of mandatory arbitration clauses to require individual arbitration only in the context of wage-and-hour class actions." The trial court also stated, without further elaboration: "Further, and as a separate basis to find no waiver, plaintiffs have failed to make the required showing of resulting prejudice." On appeal, CarMax argues that when Plaintiffs filed their class action complaints in 2008, the California Supreme Court had held that class action waivers were both procedurally and substantively unconscionable and thus unenforceable, first in the context of a consumer contract of adhesion (*Discover Bank*, at pp. 162–163), and then in the employment context (*Gentry*, *supra*, 42 Cal.4th at p. 463). CarMax contends that it would therefore have been futile to invoke the arbitration agreement, because under *Gentry* the arbitration agreement would have been unenforceable.

Public policy strongly favors arbitration and "requires a close judicial scrutiny of waiver claims." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).) "Although a court may deny a petition to compel arbitration on the ground of waiver [citation] waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*Ibid.*; *Iskanian*, *supra*, 59 Cal.4th at p. 375.) "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24–25 [103 S.Ct. 927, 74 L.Ed.2d 765].)

8

A written agreement to arbitrate an existing or future dispute can be waived if not properly asserted.  (Code Civ. Proc., § 1281.2, subd. (a).)  *Iskanian*, *supra*, 59 Cal.4th 348 characterized the waiver inquiry as including whether the actions of the party seeking arbitration were inconsistent with the right to arbitrate; whether the machinery of litigation had been substantially invoked before the party seeking to compel arbitration notified the other party of an intent to arbitrate; whether a delay was "'unreasonable'"; and the "'critical'" question of whether the party opposing arbitration has been prejudiced by the delay in the start of arbitration.  (*Id*. at pp. 375–376.)  When, as in this case, "'"the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling."'  [Citation.]" (*Id*. at p. 375.)  The essential facts in this case are undisputed, and we therefore engage in de novo review.

Initially, we note that Plaintiffs filed their class complaints in April and May of 2008, and roughly a year later in June 2009, the parties stipulated to a stay of Plaintiffs' cases pending the California Supreme Court's 2012 decision in *Brinker*, *supra*, 53 Cal.4th 1004.  That stay was still in effect when counsel for CarMax requested arbitration in June 2011.  For the purpose of our waiver analysis, only slightly more than a year passed before CarMax indicated that it intended to move to compel for arbitration.

First, CarMax did not take any significant action inconsistent with the right to arbitrate.  CarMax engaged in more discovery than provided for in the arbitration agreement, but as noted above, the agreement also allowed the parties to request additional discovery from the arbitrator.  CarMax also successfully moved for summary adjudication on two causes of action, but as CarMax points out, the arbitration agreement provides that a party may "challenge[ ] the legal sufficiency of an asserted claim . . . in a pre-hearing brief," and the arbitrator had the power to strike a legally deficient claim prior to the arbitration hearing.

Second, the litigation machinery had been substantially invoked, with significant discovery and two summary adjudication motions, but again, those actions were

9

consistent with the terms of the arbitration agreement. CarMax did not take any important intervening steps such as engaging in judicial discovery not available in arbitration. The arbitration agreement provided a mechanism for CarMax to request the somewhat more extensive discovery it propounded, and "there is no indication that [CarMax] obtained any material information through pretrial discovery that it could not have obtained through arbitral discovery." (*Iskanian*, *supra*, 59 Cal.4th at p. 378.)

Third, the delay was not unreasonable. CarMax did not delay for a long period before moving to compel arbitration and seeking a stay. During the year after the filing of the complaints and before the parties stipulated to a stay pending the decision in *Brinker*, *supra*, 53 Cal.4th 1004, *Gentry* made a motion to compel a highly risky proposition. "[F]utility as grounds for delaying arbitration is implicit in the general waiver principles we have endorsed," and that the prevailing law "made the motion [to compel] highly unlikely to succeed weighs in favor of finding that the party has not waived its right to arbitrate." (*Iskanian*, *supra*, 59 Cal.4th at p. 376.) Further, when CarMax first requested arbitration with the stay still in effect, it acted only slightly more than a month after *Concepcion* "cast *Gentry* into doubt" (*id.* at p. 375), and CarMax filed its motion to compel only two weeks later.

Finally, Plaintiffs have not made the critical showing of prejudice. Although Plaintiffs argue that the three years between the filing of their complaints and the motion to compel impaired their ability to enjoy the benefits or efficiencies of arbitration, as we pointed out above, fully two of those three years were subject to a stay agreed to by Plaintiffs pending the resolution of legal questions (not in issue here) by the California Supreme Court in *Brinker*, *supra*, 53 Cal.4th 1004. The parties actively litigated the cases during the year preceding the stay, and Plaintiffs do not argue that any evidence was lost. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1204.) The expenses associated with litigation do not, without more, constitute prejudice when the delay in initiating arbitration was not unreasonable, and "engag[ing] in various forms of pretrial litigation does not compel the conclusion that the party has waived its right to arbitrate when a later

10

change in the law permits arbitration." (*Iskanian*, *supra*, 59 Cal.4th at pp. 377–378.)

Given the strong presumption against waiver, we agree with the trial court that no waiver occurred.

## III. The arbitration agreement is not unconscionable.

Plaintiffs contend that even if CarMax did not waive the right to arbitrate, the arbitration agreement is unconscionable. We agree with the trial court that the arbitration agreement as a whole is not unconscionable.

An agreement to arbitrate is invalid if it is both procedurally and substantively unconscionable. (Code Civ. Proc., § 1281; Civ. Code, § 1670.5; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)[4] The two types of unconscionability need not be present in the same degree, and "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is enforceable, and vice versa." (*Armendariz*, at p. 114.)

Procedural unconscionability arises in the making of the agreement, focusing on "the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 795.) There is no question here that the arbitration agreement, presented to Plaintiffs for signature on a take-it-or-leave-it basis as

---

[4] The trial court expressed doubt that *Armendariz*, *supra*, 24 Cal.4th 83, remained valid after *Concepcion*. Our Supreme Court has continued to employ *Armendariz* to determine whether arbitration agreements are unconscionable. (*Sonic-Calabasas A., Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1130; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246–250.) The court applied *Armendariz* in *Iskanian*, *supra*, 59 Cal.4th at pp. 382–383, in finding that Iskanian's right to bring a PAGA action was not waivable. We therefore employ *Armendariz* to examine whether the arbitration agreement as a whole is unconscionable. (See, e.g., *Sanchez v. CarMax Auto Superstores California LLC* (2014) 224 Cal.App.4th 398, 402; *Graham v. Bank of America, N. A.* (2014) 226 Cal.App.4th 594, 616; *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 83–84; *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 689–693.)

a precondition to applying for employment with CarMax, was a standard contract of adhesion imposed and drafted by CarMax, the party with superior bargaining power. (*Armendariz*, *supra*, 24 Cal.4th at p. 113.)  Plaintiffs do not argue, however, that they were surprised by hidden terms or somehow not informed of the terms of the agreement.  There was therefore only some evidence of procedural unconscionability.

Substantive unconscionability focuses on """"overly harsh"' or '"one-sided"' results." (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)  Plaintiffs argue that the provision allowing CarMax to alter or terminate the arbitration agreement on December 31 of any year by posting notice 30 days in advance at CarMax locations is unilateral and renders the agreement substantively unconscionable.  We found the modification provision did not make the CarMax arbitration agreement illusory in *Casas v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 1233, 1237, and noted that under California law, even a modification provision not providing for advance notice does not render an arbitration agreement illusory and thus unconscionable, because the agreement also contains an implied covenant of good faith and fair dealing.  (*Ibid*;  *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1463–1464.)

Although Plaintiffs do not raise this point, the arbitration agreement also provides: "[A]ll claims arising before alteration or termination shall be subject to the [agreement] in effect at the time the Arbitration Request Form is received by the Company."  To the extent that this express statement would subject claims "arising" before a modification but not submitted to arbitration until after incorporation of that modification into the arbitration agreement, the covenant of good faith and fair dealing cannot vary the plain language.  (*Peleg v. Neiman Marcus Group, Inc.*, *supra*, 204 Cal.App.4th at p. 1465.)[5]  Nevertheless, the arbitration agreement also provides that if any of the arbitration rules

---

[5] Plaintiffs cite *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, overruled on another point in *Concepcion*, which found unconscionable a unilateral modification clause in an arbitration agreement.  That case, however, expressly did not hold that the clause by itself rendered the agreement unenforceable.  (*Ingle*, at pp. 1179–1180, fn. 23.)

"is held to be in conflict with a mandatory provision of applicable law, the conflicting Rule or Procedure shall be modified automatically to comply with the mandatory provision" until the rules can be formally modified to comply with the law. "That express statement . . . means that should an employee assert a claim that arose before modification of the agreement, CarMax could not apply the modifications to that claim." (*Casas v. Carmax*, *supra*, 224 Cal.App.4th at p. 1237.) The modification provision therefore does not constitute sufficient evidence of substantive unconscionability to counterbalance the relatively low level of procedural unconscionability.

## IV.  *Gentry* **is preempted by the FAA.**

The trial court concluded that *Concepcion* rejected *Gentry* to the extent that it subjected a class action waiver in an arbitration agreement to special scrutiny as a precondition to determining whether to enforce the waiver. Our original opinion reversed the trial court on this point. The Supreme Court granted a writ of certiorari regarding our decision reversing the trial court, vacated the judgment, and remanded to us for reconsideration. "'Where intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, [an order granting the petition, vacating the judgment below, and remanding the case . . . ] is, we believe, potentially appropriate.' [Citations.]" (*Greene v. Fisher* (2011) 565 U.S. ___ [132 S.Ct. 38, 45, 181 L.Ed.2d 336].) *Italian Colors*, *supra*, 133 S.Ct. 2304,  decided three months after our initial opinion, and *Iskanian*, *supra*, 59 Cal.4th 348, decided a year after *Italian Colors*, establish that the FAA preempts the rule in *Gentry* and the trial court was correct.

*Discover Bank*, *supra*, 36 Cal.4th 148, which the United States Supreme Court overruled in *Concepcion*, *supra*, 563 U.S. ___, involved a consumer contract of adhesion (a credit cardholder agreement). Our Supreme Court concluded that class action arbitration waivers found in such consumer contracts may be substantively unconscionable "'inasmuch as they may operate effectively as exculpatory contract

13

clauses that are contrary to public policy.'" (*Discover Bank*, at p. 161.) The court explained that when a consumer contract of adhesion contains a class arbitration waiver, under circumstances where disputes likely involve small amounts of damages, and where a litigant alleges that the party with the greater bargaining power engages in a scheme to deliberately cheat individual consumers out of small amounts of money, under California law such a waiver is invalid as unconscionable. (*Id.* at pp. 162–163.)

The California Supreme Court followed *Discover Bank* with *Gentry*, *supra*, 42 Cal.4th 443, in which the court held that a class action waiver in an arbitration agreement not in a consumer contract, but between an employee and his employer, would be invalid "under some circumstances [in which] such a provision would lead to a de facto waiver and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws." (*Gentry*, at p. 457.) The court noted that individual awards in wage-and-hour cases tended to be modest, and employees and their attorneys must weigh that anticipated modest recovery (and the modest means of the plaintiffs) against the risk of not prevailing and incurring substantial attorney fees. Further, a current employee who sues his employer faces a greater risk of retaliation, individual employees may not sue because they are unaware that their legal rights may be violated, and even where some individual claims are larger, class actions may be necessary for the effective enforcement of statutory policies. (*Id.* at pp. 458–462.) Under those circumstances and any others imposing "real world obstacles to the vindication of class members' rights . . . through individual arbitration," (*id.* at p. 463) a class action waiver has an "exculpatory effect" and violates Civil Code section 1668. (*Gentry*, at pp. 457, 463.) After considering those factors, if the trial court concludes that a class action "is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate

14

[their] unwaivable rights . . . .'" (*Gentry*, *supra*, 42 Cal.4th at p. 463.) If no other provision in the arbitration agreement is unenforceable, the court should invalidate the waiver and send the case to arbitration as a class action, or have the class action heard in court if the parties so stipulate. (*Id.* at p. 466.) *Gentry* required the trial court to determine whether "whether a class . . . action . . . is a significantly more effective practical means of vindicating unwaivable statutory rights, which is a discretionary determination subject to abuse of discretion review." (*Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 841.) Our original opinion directed the trial court, on remand, to determine whether the *Gentry* factors required that Plaintiffs be allowed to proceed with the class action in spite of the waiver in the agreement.

*Italian Colors*, *supra*, 133 S.Ct. 2304 clarified that even when statutory rights are at stake, an arbitration agreement may include a valid waiver of class actions regardless of whether the facts show that such suits would be significantly more effective in vindicating those rights. In *Italian Colors*, the respondents were merchants who accepted American Express cards, pursuant to an agreement with American Express containing a clause that required all disputes to be resolved by arbitration, and provided "'[t]here shall be no right or authority for any Claims to be arbitrated on a class action basis.' [Citation.]" (*Id*. at p. 2308.) Respondents brought a class action against American Express for violation of the federal antitrust laws, alleging that American Express used its monopoly power in the charge card market to force merchants to accept credit cards at higher rates than competing cards. (*Ibid.*) When American Express moved to enforce the waiver and compel individual arbitration under the FAA, the merchants submitted an expert's declaration estimating that it would cost from several hundred thousand dollars to $1 million to do the analysis necessary to prove the antitrust claims, while the maximum individual recovery, even with trebled damages, would be less than $39,000. The Court of Appeal held that the waiver was unenforceable, because the merchants had proven that their costs would be prohibitive if they were compelled to arbitrate under the class action waiver. (*Ibid.*) The court granted certiorari to consider "'[w]hether the

15

Federal Arbitration Act permits courts . . . to invalidate arbitration agreements on the ground that they do not permit class arbitration of a federal-law claim." (*Ibid.*)

The court concluded that courts could not invalidate an arbitration agreement when a claim alleged violation of a federal statute, unless the FAA had been ""'"overridden by a contrary congressional command."'"" (*Italian Colors*, *supra*, 133 S.Ct. at p. 2309.) No such command existed, as nothing in the antitrust laws showed an intention to preclude a waiver of a class action procedure, and the federal rule establishing class actions did not establish an entitlement to class proceedings whenever litigants sought to vindicate a statutory right. (*Ibid.*) Further, the court rejected any "judge-made exception to the FAA . . . allowing courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right" (when plaintiffs lack economic incentive to pursue claims individually in arbitration). (*Id.* at p. 2310.) "[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." (*Id.* at p. 2311.) As an example, the court cited a case "enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions.'" (*Ibid.*) "[T]he FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims." (*Id.* at p. 2312, fn. 5.)

In *Iskanian*, *supra*, 59 Cal.4th 348, an employee signed an arbitration agreement expressly waiving class and representative actions against the employer, a transportation company. The employee's first amended complaint alleged individual and class claims against the company, alleging seven causes of action for Labor Code violations and a claim for unfair competition, and also seeking civil penalties in a representative capacity under PAGA. (*Id.* at pp. 360–361.) The company filed a motion to compel arbitration, which the trial court granted. Shortly thereafter, the California Supreme Court decided *Gentry*, and the Court of Appeal issued a writ of mandate directing the superior court to reconsider its ruling. On remand, the company withdrew its motion to compel, and the

trial court granted the employee's motion to certify the class. When the Supreme Court issued *Concepcion*, the company renewed its motion to compel, and the trial court ruled in favor of the company, ordering the case into individual arbitration and dismissing the class claims with prejudice. (*Iskanian*, *supra*, 59 Cal.4th at p. 361.) The Court of Appeal affirmed, and the California Supreme Court granted review. (*Id.* at pp. 361–362.) The court held that "*Concepcion* made clear that even if a state law rule against consumer class waivers were limited to 'class proceedings [that] are necessary to prosecute small-dollar claims that might otherwise slip through the legal system,' it would still be preempted because states cannot require a procedure that interferes with fundamental attributes of arbitration 'even if it is desirable for unrelated reasons.'" (*Id.* at p. 364.) Under *Concepcion* and *Italian Colors*, "*even* if a class waiver is exculpatory in a particular case, it is nonetheless preempted by the FAA. Under the logic of *Concepcion*, the FAA preempts *Gentry*'s rule against employment class waivers." (*Iskanian*, *supra*, 59 Cal.4th at p. 364.)

We therefore affirm the trial court's conclusion that *Gentry* does not apply to subject the class action waiver in this case to special scrutiny as a precondition to enforcement.

## V. The NLRA does not bar enforcement of the arbitration agreement.

The National Labor Relations Board (NLRB) concluded in *D.R. Horton, Inc. & Cuda* (2012) 357 NLRB No. 184, that requiring an employee to waive class treatment of grievances regarding wage claims violated an employee's rights under the NLRA. After a thorough analysis of the NLRB's decision and the Fifth Circuit's subsequent decision in *D.R. Horton, Inc. v. NLRB* (5th Cir. 2013) 737 F.3d 344, the *Iskanian* court concluded: "[I]n light of the FAA's '"liberal federal policy favoring arbitration"' (*Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1745), . . . sections 7 and 8 of the NLRA do not represent '"a contrary congressional command"' overriding the FAA's mandate (*CompuCredit* [*Corp.*] *v. Greenwood* [(2012)] 565 U.S. at p. ___ [132 S.Ct. [665,]

17

669])."  (*Iskanian*, *supra*, 59 Cal.4th at p. 373; see *Nelsen v. Legacy Partners Residential, Inc.*, *supra*, 207 Cal.App.4th at pp. 1133–1135.)

## VI.     The representative PAGA claims are not subject to waiver.

The trial court concluded that under the arbitration agreement's language prohibiting arbitration of a class action, defined as "an arbitration or lawsuit where representative members of a large group who claim to share a common interest seek collective relief," Plaintiffs could pursue only their individual PAGA claims in arbitration.  *Iskanian*, *supra*, 59 Cal.4th 348 confirms, however, that an arbitration agreement may not expressly waive an employee's representative claim under PAGA, as such a waiver "is contrary to public policy and unenforceable as a matter of state law," and that such a claim is not preempted by the FAA.  (*Id*. at p. 384.)  As an express waiver is prohibited, an implied waiver of Plaintiffs' PAGA claims cannot be read into the arbitration agreement.

As in *Iskanian*, *supra*, 59 Cal.4th 348, questions remain that the parties have not addressed:  "(1) Will the parties agree on a single forum for resolving the PAGA claim and the other claims? (2) If not, is it appropriate to bifurcate the claims, with individual claims going to arbitration and the representative PAGA claim to litigation? (3) If such bifurcation occurs, should the arbitration be stayed pursuant to Code of Civil Procedure section 1281.2?" (*Id*. at pp. 391–392.)  The parties may address those questions on remand.  (*Id*. at p. 392.)

18

## DISPOSITION

The trial court's order enforcing the Private Attorneys General Act of 2004, Labor Code section 2698 et seq., waiver in the arbitration agreement is reversed. On remand, the parties shall decide whether to agree on a single forum for all claims; if not, whether to bifurcate the claims, sending individual claims to arbitration and the representative Private Attorneys General Act claims to litigation; and if bifurcation occurs, whether to stay the arbitration pursuant to Code of Civil Procedure section 1281.2. In all other respects, the judgment is affirmed. Each side is to bear its costs on appeal.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.